## PERIGO v. VANHORN.

### January 11, 1840.

#### *Exceptions to Auditor's Report.*

A mechanic or material-man, has no lien for work done, or materials furnished, in the alteration of an old house, the walls remaining, though newly faced, and the interior modernized, the owner living in it while the work was going on.

A HOUSE in Fourth Street, the property of the defendant, was sold under a *venditioni exponas* issued in this case, the fund was paid into court, and the matter was referred to an auditor.

Before the auditor, Parry & Newbold claimed to take out of court, the sum of 475 dollars 58 cents, with interest, for which

[Perigo v. Vanhorn.]

sum they had filed a lien for lumber in this court, October 23, 1837, against said house.   There was no dispute as to the sale of the lumber and that it was used in the building, but it was contended that this was not the construction of a building within the meaning of the act of assembly, so as to entitle P. & N. to a lien.

Two witnesses were examined as to the character of the building, viz.:

*J. S. Medara, sworn.*—" I am a carpenter. I did the carpenter's work at defendant's store, on the west side of south Fourth Street, between Chestnut and Market.   All the lumber came from Parry and Newbold's yard to my shop, was worked there, and then hauled on their cart to the building; this was two or three years since.   The building was a common oldish three-story house; at the commencement we took down the front of the building to the first story; to the ceiling of the first story; the first story was wood, had been put in the year before; the brick work was laid on the girder; we carried up the brick-work from the girder four stories; we put in all new window frames and sashes in the front, above the first story.   The stairway was taken out entirely from the foundation, from the ground-floor off the pavement; the chimneys were entirely torn out, the floors were repaired.  Four large door frames were put in the back front, one in each story, a hoisting machine was put in; the partitions were entirely torn out; from the third story we put two stories on entirely new, so as to make the building five stories high.   The back front was taken down same as front, to ceiling of first story, and built up entirely new, then we threw in a girder from the first story back, and built up a counting-room, connecting the kitchen with the main building 4 stories like a piazza; this was about 10 by 12 feet, all of wood, making four additional rooms of that size, one on each story. The roof over the whole is entirely new.   The staircase used to run up in old fashion, between the two rooms; the chimneys were taken down and floors pieced out.   The partitions were all taken out, so as to throw one floor into one room, and all the partitions are new around the stairway; where the stairway stood we put in new joists and floors; four stories of the building were entirely new plastered.   The kitchen part was three stories high; we put in one floor of joists, and built one story entirely new, so as to make it four stories high. The old roof on the kitchen was raised up and put on.

[Perigo v. Vanhorn.]

The back and front were formerly connected by a one story building, on which we put four new stories, as before described.

The lumber I got was used in both, indiscriminately, in the old and new parts. None of the old lumber was used, it was sold for firewood. The last work I did was hanging doors and sash, &c. I commenced after the plastering in the fifth story, and finished that; then on the fourth, and finished that; then on the third, and finished that story; then on the second, and finished that; then on the ground story stairway. I put up no shelving, it was not more than two weeks between our commencing and finishing the upper story and our finishing the lower story. The plank got 5th month, 2d, was used for door frames, both in old and new part. The items in the bill under date of 4th month, 29th, amounting to 59 dollars, 50 cents, I suppose was used both in old and new parts; so 4th month, 13th, 7 dollars, 39 cents, was used indiscriminately, I suppose the whole of the lumber was used indiscriminately where it would best suit; all the lumber was used, as I have stated, indiscriminately. I considered it quite as much as a new building, that my carpenter work was quite as much. Mr. Vanhorn gave me written orders for lumber, I had a pass-book for the lumber, when I got through I gave it to Mr. Vanhorn.

There were new wash-boards, new mouldings and trimmings, down to ceiling of first story. There was a written contract between Vanhorn and myself; I might find it, perhaps. My bill was between 7 and 800 dollars, the work was done by measurement entirely."

Vanhorn, the defendant, being sworn, stated that " the front was taken down by removing four inches of the thickness of the front wall and facing it with new brick down to the ceiling of the first story, and that he occupied the building while the alterations were being made."

The auditor reported that this was not an erection or construction of a building, within the meaning of the act, so as to give the lumber merchants a lien.

Parry & Newbold filed the following exceptions to the auditor's report, viz.:

Parry & Newbold except to the auditor's report, filed in this case, because he has reported that they have no lien on the house and lot in Fourth Street, (No. 1 in the sheriff's advertisement) for

[Perigo v. Vanhorn.]

materials furnished in erecting and constructing said house, they
having duly filed a claim against said premises, according to the
acts of assembly.

*McCall*, for the exceptions, cited 2 *Browne* 284; 1 *Ashmead*
373.

*Stratton*, contra.

Per Curiam.—If this was not an *erection or construction of a
building*, the auditor was right in rejecting the claim of the ex-
ceptant. For remodelling or repairing, the mechanic or material
man has no lien given him by the act. There being no claim for
an issue here, the fact is submitted to our determination. Upon
the whole evidence, we think it was an alteration and repair of
an old building. The walls were the same, though newly faced,
and the store was merely modernized in the interior. The owner
continued to live in it while the work was going on.

Report confirmed.